Defendant Ford Motor Credit Company appeals from a judgment entered on a jury verdict in favor of plaintiff Verbin Byrd in the amount of $5,435.
The case centers around the repossession of a 1970 Ford Torino. On 21 November 1972 Byrd filed a two count complaint in the Circuit Court of Mobile County in count one of which he claimed damages for the conversion of his automobile by Ford Motor Credit Company (FMCC). Count two alleged FMCC, through its agent, servant or employee, fraudulently induced Byrd to deliver to the agent of FMCC his automobile which was impounded and placed in storage. Both counts claimed punitive damages; with respect to the latter count a motion to strike the claim for punitive damages was granted. Thereafter Byrd amended to add count three; alleging the wrongful taking of the automobile. In it, punitive damages were also claimed. FMCC answered by general denial of all allegations of the amended complaint.
The case went to the jury on the amended complaint and a verdict for $10,435 in favor of Byrd was returned. FMCC filed its motion for judgment notwithstanding the verdict, or in the alternative for a new trial, which was denied. However, the trial court remitted the verdict to $5,435, to which Byrd consented, and FMCC appeals from the judgment entered thereon.
The facts essential to this appeal are: On 22 October 1969 Byrd purchased from Bassett Ford, Inc., of Citronelle, Alabama, a 1970 Ford Torino under a retail installment contract which was assigned to FMCC. The payment schedule provided that Byrd would pay 36 monthly installments commencing on 6 December 1969. On 13 September 1972 the automobile was repossessed. The circumstances surrounding the repossession are conflicting, but both parties concede Byrd was contacted by Sandy Craig, a confessed "repo man," at Byrd's home to discuss whether payments on the automobile were in arrears. Craig contending they were; Byrd contending to the contrary. As a result of this conversation, and at Craig's request, Byrd went to Bassett *Page 559 
Ford, parked his automobile in front of that place and went inside to review his receipts against records of his account. While he was occupied in disputing that he was in default the automobile was removed from where he parked it and locked up in a storage area behind Bassett's building. The evidence about these events clearly supports the jury's right to conclude that Byrd was lured to Bassett Ford so that possession of his auto might be obtained without his knowledge and consent, through stealth and trickery.
FMCC says there are four issues presented for review, involving what it claims to be prejudicial error committed by the trial court. The first, and decisive one, is said to be that:
 The court erred in refusing the motion for directed verdict filed by Ford Credit, since Byrd was clearly in default in his payments at the time of repossession, and there was no breach of the peace.
The other alleged errors are said to consist in the giving of certain written jury instructions in behalf of Byrd and refusal of certain ones requested by FMCC. We find no error and affirm.
The claims stated in Byrd's amended complaint are based on the theory that his auto was converted by FMCC after possession of it was obtained wrongfully through trickery and fraud after leading Byrd to believe he was being asked to drive it to Bassett Ford, where it was repossessed, so that there a good faith discussion of whether his account was in arrears would be continued.
FMCC says there can be no wrongful taking and conversion of Byrd's auto because it turns out he was in default and there was no breach of the peace in the taking. Alabama's version of the UCC is cited. Section 9-503, Tit. 7A, Code, provides:
 "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process, if this can be done without breach of the peace or may proceed by action. * * *"
Numerous cases of this court are cited in support of FMCC's contention; also decisions of the Court of Appeals, the Fifth Circuit, and one of a United States District Court. Some of these decisions involved cases where their right to recover was grounded on theories of trespass to chattels or on realty; others of them based on various other theories. A careful examination of them, however, reveals one salient distinction from this case. At the very moment of repossession of the chattel in the cited cases there was not a contemporaneous bona fide dispute being made by the debtor regarding his or her default. FMCC argues that the evidence in this case established Byrd was at least one payment in default at the time the automobile was repossessed, therefore he cannot maintain an action for conversion, since by being in default, Byrd had no legal title to the automobile and no immediate right to possession; both essential elements of his claim.
What about § 9-503? Is self-help repossession permitted under all circumstances unless there is a concurrent breach of the peace. It is not. We cannot interpret § 9-503 to permit obtaining possession through trick, without knowledge upon the part of the debtor. To interpret § 9-503 to allow repossession in these circumstances would encourage practices abhorrent to society: fraud, trickery, chicanery, and subterfuge, as alternatives to employment of judicial processes that foster the concept of ours being a government of laws and not of men. If self-help erodes that concept then self-help must be limited as we will limit it here. Condoning FMCC's conduct under the circumstances presented here would defeat the desirable and fundamental policy of discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence.
Public policy favors the resolution of disputes by resort to the courts and the judicial process. Folmar Sons v. Copeland,57 Ala. 588. Unilateral action by FMCC, that might well have resulted in a breach of the peace and involvement of the *Page 560 
criminal statutes, could easily have been avoided by suit to recover the automobile aided by prejudgment seizure as provided in Rule 64 (b), ARCP. Although speaking of an action for trespass in the repossession of an automobile, our court of appeals said of the rightful owner of a chattel: "* * * If he cannot regain possession of his property peaceably, he must appeal to the courts of the country. * * *" Singer SewingMachine Co. v. Hayes, 22 Ala. App. 250, 114 So. 420 (1927). In citing that case with approval, as correctly enunciating the rule, the Supreme Court of Mississippi had this to say:
 "* * * The majority of people are honest and yield peaceable obedience to their contractual obligations. When they do not so yield, it is, in most cases, because there is some reason worthy of impartial examination or consideration why they do not. To allow the holder of such a contract to be his own judge, and to execute his judgment in any violent or forcible way he might choose, would be contrary to good order would be provocative of retaliatory violence and breaches of the peace; wherefore, as a matter of public policy, no such right can exist." Commercial Credit Co. v. Spence, 185 Miss. 293, 184 So. 439 (1938).
Neither can the holder of a contract be his own judge and execute his judgment by artifice or trickery.
 "* * * Therefore, when appellant, as appears, by artifice or trickery obtained possession of the mortgaged property for one purpose, and asserted the right to retain such possession for another purpose, there was a conversion by it of appellee's property, and the action must be treated as one for conversion * *" Cable Co. v. Greenfield, 196 Ky. 314, 244 S.W. 692 (1922).
The law cannot permit its subversion by devices such as here employed by FMCC in a self-help repossession. Possession of a chattel obtained through fraud, artifice, stealth, or trickery without consent of the owner, implied or expressed, is wrongful and will support an action for the conversion of the chattel.
FMCC also asserts prejudicial error in the trial court's refusal of four of its requested written jury charges and in the giving of two of Byrd's. The trial court's oral instructions adequately covered the matters contained in FMCC's refused charges and Byrd's requested charges were correct in light of the oral charge, therefore, no error resulted.
AFFIRMED.
BLOODWORTH, JONES, ALMON and SHORES, JJ., concur.